1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS WILMONT,

11              Petitioner,                    No. CIV S-05-1920 LKK DAD P

12        vs.

13   CLAUDE FINN,

14              Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for two years at his second parole

19   consideration hearing held on February 26, 2004, violated both state law and his federal

20   constitutional right to due process.  Upon careful consideration of the record and the applicable

21   law, the undersigned will recommend that petitioner's application for habeas corpus relief be

22   denied.

23                            PROCEDURAL BACKGROUND

24              Petitioner is confined pursuant to a judgment of conviction entered in the Los

25   Angeles County Superior Court in 1990.  (Answer, Ex. 1.)  A jury found petitioner guilty of three

26   counts of kidnap for robbery, in violation of California Penal Code § 209(b), and three counts of

1

1   robbery, in violation of California Penal Code § 211.  It was also determined that petitioner was

2   armed with and used a firearm in the commission of the crimes.  (Id.)  On March 22, 1988,

3   petitioner was sentenced to a state prison term of seven years to life with the possibility of parole,

4   plus two years.  (Id.; Memorandum of Points and Authorities attached to Pet. (P&A) at 11;

5   Answer, Ex. 2 at 1.)

6          Petitioner's initial parole consideration hearing, held on September 5, 2001,

7   resulted in a three-year denial of parole.  (P&A at 1.)  Petitioner's next parole consideration

8   hearing, which is placed at issue in the instant petition, was held on February 26, 2004.  (Answer,

9   Ex. 2.)  On that date, a panel of the Board of Parole Hearings, then the Board of Prison Terms,

10  found petitioner not suitable for parole and denied parole for two years.  (Id.)

11         On June 22, 2004, petitioner filed an administrative appeal from the February 26,

12  2004 decision.  (P&A at 1.)  After waiting more than 120 days for a decision on his appeal,

13  petitioner sought relief in the state courts, filing a petition for a writ of habeas corpus in the Los

14  Angeles County Superior Court.  (P&A at 1; Answer at 3.)[1]  The Superior Court rejected

15  petitioner's claims in a reasoned decision on the merits.  (Answer, Ex. 4.)

16         On May 24, 2005, petitioner filed a habeas petition in the California Court of

17  Appeal for the Second Appellate District, in which he raised the same claims that were contained

18  in his habeas petition filed in the  Los Angeles County Superior Court.  (Answer, Ex. 3.)  By

19  order dated May 26, 2005, that petition was denied with citations to In re Rosenkrantz, 29 Cal.

20  4th 616, 667 (2002) and In re Dannenberg, 34 Cal. 4th 1061 (2005).  (Id. at last page.)

21         On June 27, 2005, petitioner filed a "petition for review" in the California

22  Supreme Court, raising the same claims that were contained in his petitions for a writ of habeas

23  corpus filed with the  Los Angeles County Superior Court and the California Court of Appeal.

24  

25         [1]  Neither party has lodged a copy of this petition with this court.  However, as noted by
    respondent, petitioner represented to the California Court of Appeal in a later filed habeas
26  petition that the claims made in that petition were the same as the claims made in his petition
    filed in the Los Angeles County Superior Court.

1    (Answer, Ex. 5.)  That petition for review was summarily denied by order filed September 7,

2    2005.  (Id. at last page.)

3                            FACTUAL BACKGROUND

4        The Board described the facts of petitioner's offenses, which have not changed

5    over the years, at the February 26, 2004 parole suitability hearing, as follows:

> July the 2nd, 1986, at approximately 7:30 a.m. Victor – or Victim
> Victor was delivering gas to a gas station when Wilmont's
> codefendant, Bell, wearing a bandana over his face and dark
> glasses, approached the right side of the truck.  As Victor
> attempted to exited [sic] the driver's door Wilmont pushed the
> door closed keeping in him [sic] in the cab.  Bell entered the cab
> through the passenger door, and once inside he pointed a handgun
> at Victor and told him back out and head west on the 210.  As the
> tanker approached Highway 2 Victor was told to get into the back
> sleeper of the truck and lay down.  Bell then tied Victor's hands
> behind his back to his belt loop, blindfolded him and stated lie
> there.  Bell then took control of the tanker and continued west on
> the 210 Freeway for approximately ten to 15 minutes.  He then
> exited the freeway and stopped, Wilmont had been following in
> another vehicle.  And, after unloading the gasoline, Bell drove back
> onto the freeway, stopped leaving the tanker.  Victor was able to
> free himself and return to the tanker.  On August the 2nd, of 1986
> at approximately 2:50 a.m. Victim Hastings was delivering
> gasoline to a gas station.  Upon arrival Hastings walked to the rear
> of the location to collect the payment for the gasoline.  As he
> walked back to the front he passed the dumpster.  Subject one
> jumped out from behind the dumpster and pointed a steel revolver
> at his face.  He was then ordered to drop the pay box, put his hands
> behind his head and stand up against the wall.  Hastings was then
> ordered into the front passenger seat of the truck.  Subject number
> two sat in the driver's seat and told him don't try to get out and
> don't leave the truck.  Subject number two asked Hastings when
> his shift was over, and he replied that he was an hour late.  Upon
> hearing this, subject two stopped the truck and waited for subject
> one who was following in another vehicle.  Subject two then told
> subject one that the victim was running late on all his runs and that
> they should forget about stealing the truck and trailer.  Subject one
> replied, we've gone this far.  We're not stopping.  Hastings was
> then taken out of the truck and placed in the vehicle with subject
> one.  While subject one drove the car, subject two followed behind
> in the tanker truck.  The truck and the tanker trailer were last –
> were later recovered.  Although his identity is not specified, subject
> two's actions are consistent with Wilmont's previous actions in the
> other counts.

26    /////

3

(Answer, Ex. 2 at 10-11.)  Petitioner acknowledged at the February 26, 2004, parole suitability hearing that the Board's recitation of the facts of his crimes was accurate.  (Id. at 11.)  He conceded that he was "the second driver, or the follow up driver, in the vehicle."  (Id.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

1      The court looks to the last reasoned state court decision as the basis for the state

2  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4  federal habeas court independently reviews the record to determine whether habeas corpus relief

5  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

6  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

10  1167 (9th Cir. 2002).

11  II.  Petitioner's Claims

12      Petitioner raises several arguments challenging the Board's February 26, 2004,

13  decision finding him unsuitable for parole.  Specifically, he claims that: (1) the "timing and

14  gravity of the offense" were not sufficient reasons to deny him a parole date; (2) the reasons cited

15  by the Board in finding him unsuitable for parole have no bearing on whether petitioner poses an

16  unreasonable risk to public safety if released; and (3) the District Attorney's opinion that

17  petitioner should not be released is not a proper ground for finding petitioner unsuitable for

18  parole.  (Pet. at 3A.)  In essence, these claims allege that petitioner's right to due process was

19  violated by the Board's unfavorable parole suitability decision.  (P&A at 1-30.)  Petitioner also

20  raises several state law claims.  Specifically, he argues that: (1) the Board erred in denying him

21  parole for a two-year period; (2) the Board must "establish a primary term based on the

22  petitioner's individual culpability and proportionate to his offense;" and (3) petitioner's parole

23  suitability hearing did not conform to the definition of a "hearing" contained in Title 15, § 2281,

24  of the California Court of Regulations.  (Pet. at 3A.)  The court will evaluate petitioner's due

25  process and state law claims in turn below.

26  /////

A.  Due Process

    1.  Due Process in the California Parole Context

        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

        A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  Wilkinson v. Austin  545 U.S. 209, 221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court must examine whether the state court's conclusion that California provided the constitutionally required procedural safeguards when it deprived petitioner of a protected liberty interest is contrary to or an unreasonable application of federal law.

/////

6

1    Because "parole-related decisions are not part of the criminal prosecution, the full

2    panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

3    Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

4    citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

5    process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

6    notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

7    reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

8    Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

9    parole issues).  Violation of state mandated procedures will constitute a due process violation

10   only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

11    In California, the setting of a parole date for a state prisoner is conditioned on a

12   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

13   requirements of due process in the parole suitability setting are satisfied "if some evidence

14   supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

15   445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

16   Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

17   standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

18   456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

19   there is any evidence in the record that could support the conclusion reached by the factfinder.

20   Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

21   McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

22   decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler,

23   974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

24   require examination of the entire record, independent assessment of the credibility of witnesses,

25   or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any

26   reliable evidence in the record that could support the conclusion reached.  Id.

1    When a federal court assesses whether a state parole board's suitability

2 determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

3 statutes and regulations governing parole suitability determinations in the relevant state." Irons

4 v. Carey, 505 F.3d 846, 851 (9th Cir. 2007)  This court must:

> 5    look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
> 6    record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
> 7    [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in Hill.

8

9 Id.

10    The state regulation that governs parole suitability findings for life prisoners states

11 as follows with regard to the statutory requirement of California Penal Code § 3041(b):

12 "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

13 parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

14 society if released from prison." Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding

15 concern in determining parole suitability is public safety.  In re Dannenberg, 34 Cal. 4th at 1086.

16 This "core determination of 'public safety' . . . involves an assessment of an inmates current

17 dangerousness." In re Lawrence, 44  Cal. 4th at 1205 (emphasis in original).  Accordingly,

> 18    when a court reviews a decision of the Board or the Governor, the
> relevant inquiry is whether some evidence supports the decision of
> 19    the Board or the Governor that the inmate constitutes a current
> threat to public safety, and not merely whether some evidence
> 20    confirms the existence of certain factual findings.

21 Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

22 and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

23    Under California law, prisoners serving indeterminate prison sentences "may

24 serve up to life in prison, but [] become eligible for parole consideration after serving minimum

25 terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole

26 release date one year prior to the inmate's minimum eligible parole release date, and does so "in

1   a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

2   to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code §

3   3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the

4   current convicted offense or offenses, or the timing and gravity of current or past convicted

5   offense or offenses, is such that consideration of the public safety requires a more lengthy period

6   of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code §

7   3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all

8   relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

14   Cal. Code Regs., tit. 15, § 2281(b).

15          The regulation identifies circumstances that tend to show suitability or

16   unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

17   prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

18   committing crimes with a potential of personal harm to victims; the prisoner has experienced

19   reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

20   the presence of remorse or has given indications that he understands the nature and magnitude of

21   his offense; the prisoner committed his crime as the result of significant stress in his life; the

22   prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

23   the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

24   probability of recidivism; the prisoner has made realistic plans for release or has developed

25   marketable skills that can be put to use upon release; institutional activities indicate an enhanced

26   ability to function within the law upon release.  Id., § 2281(d).

1    The following circumstances tend to indicate unsuitability for release: the prisoner

2    committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

3    previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

4    a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

5    the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

6    consider in deciding whether the prisoner's offense was committed in an especially heinous,

7    atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

8    or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

9    as an execution-style murder; the victim was abused, defiled or mutilated during or after the

10   offense; the offense was carried out in a manner that demonstrated an exceptionally callous

11   disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

12   to the offense.  Id., § 2281(c)(1)(A) - (E).

13   In the end, under current California law as recently clarified by the Supreme Court

14   of that State,

15   the determination whether an inmate poses a current danger is not
     dependent upon whether his or her commitment offense is more or
16   less egregious than other, similar crimes.  (Dannenberg, supra, 34
     Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
17   dependent solely upon whether the circumstances of the offense
     exhibit viciousness above the minimum elements required for
18   conviction of that offense.  Rather, the relevant inquiry is whether
     the circumstances of the commitment offense, when considered in
19   light of other facts in the record, are such that they continue to be
     predictive of current dangerousness many years after commission
20   of the offense.  This inquiry is, by necessity and by statutory
     mandate, an individualized one, and cannot be undertaken simply
21   by examining the circumstances of the crime in isolation, without
     consideration of the passage of time or the attendant changes in the
22   inmate's psychological or mental attitude. [citations omitted].

23   In re Lawrence, 44 Cal. 4th at 1221.

24   In addition, in recent years the Ninth Circuit Court of Appeals has concluded that,

25   given the liberty interest that California prisoners have in release on parole, a continued reliance

26   upon an unchanging factor to support a finding of unsuitability for parole over time may

1  constitute a violation of due process.  The court has addressed this issue in three significant

2  cases, each of which will be discussed below.

3           First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

4  reliance on an unchanging factor such as the circumstances of the offense could at some point

5  result in a due process violation.[2]  While the court in Biggs rejected several of the reasons given

6  by the Board for finding the petitioner in that case unsuitable for parole, it upheld three:  (1)

7  petitioner's commitment offense involved the murder of a witness; (2) the murder was carried

8  out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

9  petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

10  cautioned that continued reliance solely upon the gravity of the offense of conviction and

11  petitioner's conduct prior to committing that offense in denying parole could, at some point,

12  violate due process.  In this regard, the court observed:

13           As in the present instance, the parole board's sole supportable
             reliance on the gravity of the offense and conduct prior to
14           imprisonment to justify denial of parole can be initially justified as
             fulfilling the requirements set forth by state law.  Over time,
15           however, should Biggs continue to demonstrate exemplary
             behavior and evidence of rehabilitation, denying him a parole date
16           simply because of the nature of Biggs' offense and prior conduct
             would raise serious questions involving his liberty interest in
17           parole.

18  Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

19  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

20  contrary to the rehabilitative goals espoused by the prison system and could result in a due

21  process violation."  Id. at 917.

22           In Sass, the Board found the petitioner unsuitable for parole at his third suitability

23  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

24  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

25

26      [2]  That holding has been acknowledged as representing the law of the circuit.  Irons, 505
    F.3d at 853; Sass, 461 F.3d at 1129.

unchanging factors violated due process.  The court disagreed, concluding that these factors

amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and *could* result
> in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  Cf. id.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

> In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

stating as follows:

> Because the murder Sass committed was less callous and cruel than
> the one committed by Irons, and because Sass was likewise denied
> parole in spite of exemplary conduct in prison and evidence of
> rehabilitation, our decision in Sass precludes us from accepting
> Iron's due process argument or otherwise affirming the district
> court's grant of relief.
>
> We note that in all the cases in which we have held that a parole
> board's decision to deem a prisoner unsuitable for parole solely on
> the basis of his commitment offense comports with due process,
> the decision was made before the inmate had served the minimum
> number of years required by his sentence. Specifically, in Biggs,
> Sass, and here, the petitioners had not served the minimum number
> of years to which they had been sentenced at the time of the
> challenged parole denial by the Board. Biggs, 334 F.3d at 912;
> Sass, 461 F.3d at 1125.  All we held in those cases and all we hold
> today, therefore, is that, given the particular circumstances of the
> offenses in these cases, due process was not violated when these
> prisoners were deemed unsuitable for parole prior to the expiration
> of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there
> was substantial evidence in the record demonstrating rehabilitation.

1
2
3
4
5

      In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

6 Irons, 505 F.3d at 853-54.[3]

7       After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and

8 Irons[4], and for the reasons set forth below, this court concludes that petitioner is not entitled to

9 federal habeas relief with respect to his due process challenge to the Board's February 26, 2004,

10 decision denying him parole.

11       2. Analysis

12       In addressing the factors it considered in reaching its 2004 decision that petitioner

13 was unsuitable for parole, the Board in this case stated as follows:

14
15
16
17
18
19
20

      PRESIDING COMMISSIONER MOORE:  Let the record show all interested parties have returned to the room, Dennis Wilmont, CDC number D as in David 81305.  The Panel reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk or danger to society and a threat to public safety if released from prison at this time.  The paramount reasoning would be the timing and gravity of the committing offense.  The offense was the hijacking of gasoline vehicles, trucks, commercial drivers.  There was two of them involved in this particular incident on two separate occasions.  The prisoner and his crime partner, they hijacked Mr. Fred Hasting and

21
22

    [3]  The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety.  In re Lawrence, 44  Cal. 4th at 1218-20 & n. 20.

23
24
25
26

    [4]  Even more recently a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

Anthony Michael Victor.  These men were accosted in that regard.
The prisoner said he only used a BB gun in holding them up to get
them to transport – kidnap them and transport them to an isolated
area where they could take over their vehicles and get the truck and
gasoline from them.  The motive for the crime was inexplicable.  It
was about money, about some gambling.  At least for sure there
was no real reason for this, no necessity to do this crime.  These
conclusions were drawn from the Statement of Facts wherein the
prisoner at gunpoint armed and had used a mask or bandanas to
cover their faces with.  There were multiple victims, two different
incidence [sic], the hijacking of gasoline vehicles, gasoline trucks.
Previous record, the prisoner had kind of an extensive history of
arrests if you will, an escalating pattern of conduct, not a whole lot
of convictions, however, but arrests nonetheless.  I would consider
having a tumultuous relationships with others in terms of that.  The
prisoner, as we talked about today, was running with the wrong
kinds of people.  He dropped out of school at an early age, not
finishing high school, problems with dyslexia.  But nevertheless,
he never decided to finish school at the appropriate time.  He
subsequently went on to a trade school, however.  But he did have
some problems in that.  He was running around with the wrong
kind of folks as well, having multiple arrests for various kinds of
robberies and burglaries, grand theft, various kinds of things that
the prisoner was convicted for.  Institutional behavior, the prisoner
has programmed in a limited manner.  He's not completed or not
upgraded educationally at this point.  Although he's making some
efforts, but he was previously ordered by the Board.  He's not
sufficiently participated in beneficial self-help programming at this
time.  There are no 115s, however, (inaudible).  Psychosocial
report, it appears somewhat positive, Dr. Bakeman.  Parole plans,
the prisoner lacks realistic parole plans in the county of legal
residence.  However, the prisoner has made some efforts in trying
to find some parole  plans.  He has no real family, according to the
prisoner, where he can reside, although he's made some efforts in
terms of finding – trying to find some location where he can go to a
halfway house or something of that nature, group facilities.  3042
Notices, they indicate an opposition to a finding of suitability,
specifically the District Attorney's Office of Los Angeles County is
in opposition to a finding of suitability for today.  Remarks, the
prisoner still needs some self-help in order to face, discuss,
understand and cope with stress in a nondestructive manner, to
better understand the causative factors so that the prisoner could
better explain and understand how he got himself in the midst of
this, hijacking and kidnapping, robbery of victims.  Until progress
is made the prisoner continues to be unpredictable and a threat to
others.  He should be commended.  He's been disciplinary-free
since 1992, '97 four 128s, participated in the 12 Step for Recovery,
got phase I and II, working on phase III currently.  I believe he
completed the landscape program.  He's participated in the
prisoner fellowship ministry studies.  However, these positive
aspects of his behavior don't outweigh the factors of unsuitability

1    at this time.  This will be another two-year denial, Mr. Wilmont.
     And in a separate decision the hearing Panel finds that the prisoner
2    is convicted of kidnap for robbery.  As I mentioned, two different
     victims in separate occasions, Mr. Hastings and Mr. Victor, taking
3    of gasoline trucks, transport trucks.  The offense was carried out in
     a calculated manner.  The crime was inexplicable in relationship to
4    the offense.  The prisoner had a history of unstable and tumultuous
     relationships with others, as I mentioned, dropping out of school at
5    an early age, dealing with – running around with the wrong sorts of
     people.  He's not completed an education, upgraded, as
6    recommended by the Board, nor has he completed the necessary
     self-help programming at this time.  Therefore, a longer period of
7    observation, Mr. Wilmont, is called for before the Board shall find
     that he's suitable for parole.  Recommendations to you are to
8    continue to remain disciplinary-free, Mr. Wilmont, and continue to
     upgrade educationally, whatever you can do, whatever you can get
9    accomplished, as well as continue in the self-help programming
     that you are making some headway on, some progress on.  And
10   hopefully it will help you to understand the causative factors as I
     mentioned.

11

12   (Answer, Ex. 2 at 55-59.)

13           In order to uphold the Board's decision that petitioner was unsuitable for parole,

14   the state courts were required to find that the decision was based on "some evidence" in the

15   record that bore "indicia of reliability" that petitioner constituted a current threat to public safety.

16   Two of the factors relied on by the Board to find petitioner unsuitable for parole were that the

17   commitment offense involved multiple victims in separate incidents, and that the motive for the

18   crime was inexplicable.  The Los Angeles County Superior Court found there was "some

19   evidence" that multiple victims were attacked in separate incidents.  (Answer, Ex. 4 at 2.)

20   However, it concluded that the motive for the crime was not "inexplicable" because it was

21   neither "unexplained nor unintelligible."  (Id. at 1-2.)  This court agrees that the motive for

22   petitioner's crime was not "inexplicable."  On the contrary, petitioner explained that he

23   committed the crime because he had been out of work and needed the money.  (Answer, Ex. 2 at

24   12.)  Accordingly, this factor did not constitute "some evidence" in support of the Board's

25   decision finding petitioner unsuitable for parole.

26   /////

1    The Board also relied on petitioner's prior criminal record, including an

2   "extensive history of arrests," to find him unsuitable for parole.  However, the Superior Court

3   also rejected this reason, explaining:

> None of petitioner's prior convictions were for violent crimes.
> Moreover, arrests alone are not reliable evidence that an accused
> committed the crimes charged.  (People v. Calloway (1974) 37
> Cal.App.3d 905.)  Thus, there is no evidence petitioner is
> unsuitable because of his prior criminal record.

7   (Answer, Ex. 4 at 2.)  This court agrees that petitioner's prior record of arrests does not

8   demonstrate that he would pose a current danger to society if released.  Accordingly, this court

9   rejects that justification as well for the Board's decision.

10    The Board also found petitioner unsuitable for parole because of his prior unstable

11   social history.  The Superior Court found there was "some evidence" to support this factor,

12   noting that:

> The record reflects petitioner admitted to having run around with
> "the wrong crowd," and as such, often was the target of police
> inquiry.  He dropped out of school after the eleventh grade after
> losing three fingers in an accident.  He felt it would have been
> "embarrassing" to return to school because his class would
> graduate without him.

17   (Id.)  At the parole suitability hearing, petitioner explained that he committed the robberies with a

18   friend he had known since high school.  (Answer, Ex. 2 at 15.)  An evaluation by a prison

19   correctional counselor stated that petitioner posed a moderate degree of threat to the public if

20   released and that "without the foundation of a solid support system, and the stability of a job

21   upon release, it is uncertain as to whether he will be able to resist the influences that he will find

22   on the outside."  (Id. at 34.)  Petitioner disagreed that, if released, he would "go back to hanging

23   around with the people I used to hang around with."  (Id. at 35.)  Although the Board did not rely

24   on the counselor's letter in finding petitioner unsuitable for parole, it found that the counselor's

25   comments were "consistent" with petitioner's remarks at the hearing regarding the outside

26   influences that had contributed to his crimes.  Under these circumstances, this court agrees that

there is "some evidence" in the record to support the Board's finding that petitioner's unstable

social history was a valid factor indicating that petitioner might pose a current threat to public

safety if released.

The Board also concluded that petitioner was unsuitable for parole because he had

not sufficiently participated in institutional programming and lacked realistic parole plans.  The

Superior Court agreed there was some evidence supporting both of these factors, explaining:

> The record reflects petitioner has failed to obtain his GED, despite
> Board recommendations that he do so.  He has, however,
> participated in faith-based recovery and prerelease programs
> covering such topics as money management, insight, employment,
> goal setting, and responsibility.  He participated in vocational
> training for upholstery and landscape but could not provide proof
> he completed either of those programs.  While petitioner has
> participated in institutional programming there is "some evidence"
> to support the Board's conclusion that he could benefit from
> additional programming.  Moreover, petitioner has not made any
> arrangements for a residence upon his release.  Thus, there is also
> "some evidence" he lacks realistic parole plans.

(Answer, Ex. 4 at 2.)

The record of the parole suitability hearing reflects that the Board recognized

petitioner had made some attempts to establish parole plans, such as living at a "halfway house"

or "group facilities," but that he was finding it difficult to do so because he had "no family."

(Answer, Ex. 2 at 57.)  The Board noted that petitioner had sent out various letters in an attempt

to find a place to reside after his release.  (Id. at 46.)  Petitioner's counsel informed the Board that

halfway houses will not guarantee a bed unless a prisoner has obtained a parole date, explaining

to the Board that "once he gets a date then he firm [sic] up his parole plans at the halfway houses,

which is where he's going to have to go because he's got nobody else."  (Id. at 51, 53.)  Counsel

argued that petitioner should not be penalized for not having a place to live, particularly in light

of the fact that he had no family.  (Id.)

Petitioner also explained to the Board that, notwithstanding the lack of

documentation in the record, he had in fact completed the prison landscaping program.  (Id. at

17

1  28-29.)  In its suitability decision, the Board gave petitioner credit for completing that program.

2  (Id. at 58.)  Petitioner conceded that he had not completed the prison upholstery program or

3  obtained a GED as of yet.  (Id. at 29.)  He explained that he had taken the GED exam "about

4  seven times" but had been unable to pass it because of his problems with Attention Deficit

5  Disorder.  (Id. at 37-38.)  One of the documents before the Board was an evaluation by one of

6  petitioner's teachers, who stated that petitioner's attitude was excellent but his "academic focus"

7  had not been strong in the last quarter.  (Id. at 38-39.)  The Board construed those comments to

8  mean that petitioner had been "sidetracked," but that his focus would improve.  (Id. at 39.)

9  Petitioner agreed with this assessment.  (Id.)

10         In the instant petition, petitioner argues that his Attention Deficit Disorder makes

11  it "difficult, if not impossible" to learn in a classroom setting.  (P&A at 18.)  He also argues that

12  he should not be faulted for failing to obtain a realistic parole plan when he has no family and no

13  parole date.  However, the fact remains that petitioner did not obtain his GED, as requested by

14  the Board at his prior suitability hearing, and that he had not secured either a place to live or

15  employment on his release at the time of his 2004 hearing.  Accordingly, there is "some

16  evidence" in the record to support the Board's reliance on these factors to determine that

17  petitioner was not suitable for parole.  In addition, the record reflects that while petitioner was

18  finding it difficult to obtain his GED and to formulate suitable parole plans, neither petitioner nor

19  the Board appeared to believe it was going to be impossible to do so.  The conclusion of the

20  Board that petitioner could benefit from further efforts towards obtaining a high school diploma

21  and making realistic parole plans is not an unreasonable determination of the record in this case

22  and therefore constitutes "some evidence" in support of the Board's finding that petitioner was

23  not yet suitable for parole.

24         Petitioner argues that the Board improperly relied on the District Attorney's

25  opposition to his release on parole to deny him a parole date.  It is true that, under Hill, the

26  district attorney's opinion, without more, cannot be considered "some evidence" supporting the

1 Board's decision. <u>Rosenkrantz v. Marshall</u>, 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006).

2 However, as noted by the Los Angeles County Superior Court, "[t]he Board acknowledged the

3 [District Attorney's] opposition but did not specifically cite it as a reason for the parole denial."

4 (Answer, Ex. 4 at 3.)  Accordingly, the Board did not improperly rely on this factor to find

5 petitioner unsuitable for parole.  <u>See</u> <u>Id.</u>

6          The Board also relied on the circumstances of petitioner's offense of conviction to

7 find him unsuitable for parole.  Under the authorities discussed above, the circumstances of the

8 offense of conviction may constitute a valid factor supporting the Board's decision.  <u>Sass</u>, 469

9 F.3d at 1129; <u>Irons</u>, 505 F.3d at 665.

10          Based on the legitimate reasons cited by the Board in support of its 2004

11 suitability decision: to wit, the fact that petitioner's crime involved multiple victims; petitioner's

12 unstable social history; petitioner's failure to participate in institutional programming to the

13 extent recommended by another Board panel; the lack of suitable parole plans; and the

14 circumstances of petitioner's crime, this court concludes that the Board's 2004 decision that

15 petitioner was unsuitable for parole at his second parole suitability hearing and would pose a

16 danger to society if released meets the minimally stringent test set forth in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>.

17 Although arguably a close case given the fact that petitioner has already served at least nineteen

18 years on a seven years to life sentence, this case has not yet reached the point where a continued

19 reliance on an unchanging factor such as the circumstances of the offense in denying parole has

20 resulted in a due process violation.  Accordingly, petitioner is not entitled to relief on his claim

21 that the Board's failure to find him suitable for parole at the February 26, 2004 parole suitability

22 hearing violated his right to due process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.

23          B.  <u>State Law Claims</u>

24               1.  <u>Dual Use of Facts</u>

25          Petitioner claims that the Board's decision to schedule his next parole hearing in

26 two years instead of one year "fails for lack of evidence and legal justification."  (Pet. at 3A.)

19

1   Specifically, he argues that the Board's use of the same factors to find him unsuitable for parole

2   and also to delay his next parole hearing was improper.  (Pet. at 5A; P&A at 21-26.)  The Los

3   Angeles County Superior Court rejected this argument on state law grounds, reasoning as

4   follows:

5      The Court rejects petitioner's argument that the Board improperly
   relied on the same factors to issue a multiple-year denial as they

6      did to deny parole.  The reasons for refusing to set a parole date
   and for excepting an inmate from annual review, need not be

7      completely different.  All that is required is that the Board identify
   the reasons which justify the postponement.  (See In re Jackson,

8      (1985) 39 Cal.3d 464, at 479.)  Here the Board set forth, in a
   separate decision, the reasons for the multiple-year denial.  In

9      particular, the Board expressed concern that petitioner needs
   additional time to participate in institutional programming.  Thus,

10     the Board sufficiently identified the reasons for the multiple-year
   denial.

11

12  (Answer, Ex. 4 at 3.)

13     Petitioner's claim in this regard is based on state law and is therefore not

14  cognizable in this federal habeas corpus proceeding.  Middleton, 768 F.2d at 1085.  The state

15  court's conclusion that the Board complied with California law in postponing petitioner's next

16  suitability hearing for two years is binding on this court.  See Bradshaw v. Richey, 546 U.S. 74,

17  76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one

18  announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

19  corpus").  Petitioner has cited no federal case holding that a state parole board may not use some

20  of the same factors it uses to deny parole when deciding when to schedule the next parole

21  suitability hearing.  See Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1419 (2009)

22  ("this Court has held on numerous occasions that it is not 'an unreasonable application of clearly

23  established Federal law' for a state court to decline to apply a specific legal rule that has not been

24  squarely established by this Court"); Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004)

25  ("If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state

26  court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly–

1    established federal law").  Accordingly, for the foregoing reasons, petitioner is not entitled to

2    relief on this claim.

3                    2. Proportionality

4                    Petitioner's next claim is that the Board "must establish a primary term based on

5    the petitioner's individual culpability and proportionate to his offense."  (Pet. at 6; P&A at 26-

6    30.)  Petitioner "urges the Court to order the BPT to adopt rules" requiring the Board to set a

7    "primary term or maximum period of incarceration for his life crime based upon the

8    circumstances existing at the time of his life crime based upon the circumstances existing relating

9    to the commission of the crime."  (P&A at 28, 29.)  Petitioner argues that these rules are

10   "mandated by the cruel and unusual punishment clause of the Eighth Amendment of the United

11   States Constitution."  (Id. at 28.)

12                   The Los Angeles County Superior Court rejected this argument, reasoning as

13   follows:

14              Finally, the Court rejects petitioner's arguments related to Penal
                Code § 3041 and proportionality.  The Board will not take
15              proportionality into account as set forth in Penal Code § 3041(a)
                until the Board finds petitioner suitable under Penal Code §
16              3041(b).  (In re Dannenberg (2005) 34 Cal.4th 1061.)  Moreover,
                the Board's primary concern in determining parole suitability is the
17              safety of the community.  (Id.)  Here the record reflects the Board
                considered petitioner's post conviction gains but still concluded
18              Petitioner would pose an unreasonable threat to public safety.
                (Penal Code § 3041(b).)  Thus, petitioner should expect to serve
19              his maximum sentence of life in prison unless and until the Board
                acts to fix a shorter term.  (Dannenberg at 1097-1098.)
20

21   (Answer, Ex. 4 at 3.)  The California Supreme Court has held that the Board is not required to

22   engage in a comparative analysis of the period of confinement being served by other inmates for

23   similar crimes.  In re Lawrence, 44 Cal. 4th at 1217, 1221; In re Dannenberg, 34 Cal. 4th at 1070-

24   71.  Rather, the suitability determination is to be individualized and is to focus upon the public

25   safety risk currently posed by the particular offender.  Id.  More importantly for purposes of this

26   federal habeas corpus action, petitioner has cited no federal authority for the proposition that the

1  Due Process Clause requires a state parole board to either set a parole date where the board

2  members believe a prisoner poses an unreasonable risk of danger to society or engage in a

3  comparative analysis before denying parole suitability.  Petitioner has also failed to establish that

4  the rules he suggests are required by the Eighth Amendment.  Accordingly, petitioner is not

5  entitled to relief on this claim.

6       3.  <u>Whether the Proceedings Before the Board Constituted the Required "Hearing"</u>

7       Petitioner next claims that Title 15, CCR § 2281 "does not conform to its own

8  definition of a 'hearing' denying due process."  (Pet. at 6; P&A at 30-33.)  Specifically, he argues

9  that the proceedings before the Board did not qualify as the "hearing" to which he was entitled

10  under the California statutory scheme because no "evidence" of "unreasonable risk" was

11  introduced or considered.  (P&A at 31-32.)  Petitioner also reasserts his argument that the factors

12  mentioned by the Board in support of its suitability decision did not have a "nexus" to whether

13  petitioner would pose a current threat to public safety if released.  In this regard he argues, "[t]he

14  Panel has held a "hearing" or something similar that delivered a decision based on surmise and

15  conjecture with no evidence having been introduced or considered, depriving the petitioner of his

16  due process rights as described above in the California and United States Constitutions."  (<u>Id.</u> at

17  32.)  Petitioner's arguments regarding the nature of the "hearing" that is required to determine

18  parole suitability is based entirely on state law and is therefore not cognizable in this federal

19  habeas corpus proceeding.  <u>Estelle</u>, 502 U.S. at 67-68.  To the extent that petitioner is simply

20  rephrasing his due process arguments, those claims have been addressed above.

21       CONCLUSION

22       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

23  a writ of habeas corpus be denied.

24       These findings and recommendations are submitted to the United States District

25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

26  days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3  shall be served and filed within ten days after service of the objections.  The parties are advised

4  that failure to file objections within the specified time may waive the right to appeal the District

5  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: June 19, 2009.

7

8  _____

9  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

10 DAD:8:
   wilmont1920.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26